MATTER OF YARDEN

In Section 245 Proceedings

A-20390467

*Decided by Regional Commissioner August 6, 1976*

In the absence of unusual or outstanding equities, an application for adjustment of status under section 245 of the Immigration and Nationality Act will be denied as a matter of discretion where the labor certification supporting such application, or eligibility for exemption therefrom, was predicated on experience and/or income derived from employment held by applicant in violation of the immigration laws.

ON BEHALF OF APPLICANT: David G. Stern, Esquire
Choate, Hall & Stewart
28 State Street
Boston, Massachusetts 02109

This matter is before the Regional Commissioner on certification pursuant to 8 CFR 103.4. The district director denied the application for adjustment of status under Section 245 of the Immigration and Nationality Act, as amended, on the ground that the alien failed to establish that he is exempt from the requirements of Section 212(a)(14) of the Act; and further, he has not established that his application merits favorable exercise of discretion by the Attorney General.

The applicant, a 29 year old-native and citizen of Israel, was admitted to the United States on March 3, 1968, until September 2, 1968, as a nonimmigrant visitor for pleasure. He had neither requested nor received any extension of his authorized stay. In April, 1968, he accepted employment as an insurance salesman. He was subsequently employed as an automobile salesman from August, 1968, to February, 1970. He then accepted employment with the Y & D Auto Body, Inc., a company he purchased October 21, 1970, and which he has managed since that date. He initially applied for adjustment of status under Section 245 of the Act on June 29, 1973, as a nonpreference immigrant claiming exemption from the provisions of Section 212(a)(14) on the basis of his investment in the above-named company. The application was denied September 13, 1973, because a nonpreference visa number was not available at that time. On September 28, 1973, Y & D Auto Body, Inc., made application to the Department of Labor for the certification re-

quired by Section 212(a)(14) requesting the applicant's services as an auto body man. Such application was denied February 11, 1974, on a finding that the wage offer of $6 per hour was below the prevailing wage rate of $7 per hour and that qualified resident workers were available.

The instant application was filed June 6, 1974. Exemption from Section 212(a)(14) under the provisions of 8 CFR 212.8(b)(4) as an investor is again claimed. In support of his application, there have been submitted Form I-526, a bill of sale dated October 21, 1970, in the amount of $4,000 for the purchase of Y & D Auto Body, the Articles of Organization of Y & D Auto Body, Inc., cancelled checks, income tax returns, a property mortgage, bank letters, a lease agreement, and a Notice of Change of Corporate Officers. The Articles of Organization show that the company was incorporated for the purpose of "general auto and truck body repair and sale of damaged body automobiles and trucks." It is indicated that there are 5,000 shares of common stock with a par value of $2 per share. Joseph Yarden, the applicant, and Shifra Yarden, his wife, since divorced, are shown as the only officers of the company. Under capital investments on Form I-526, applicant's investment is shown as: cash, $3,000; tools and machinery, $18,000; and inventory of $2,000.

In his decision, the district director states that the bill of sale indicates a payment of $4,000 was made for the purchase of the company; that further investment consisted of the purchase of equipment and material required to operate the business, and that the applicant failed to establish that he had at least one year of experience in any managerial capacity. It was further concluded that the money invested in the business was earned through the alien's illegal employment in the United States, and that the application did not warrant the favorable exercise of discretion by the Attorney General.

Section 245 of the Act states: "The status of an alien other than an alien crewman who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved." (Underscoring supplied).

Section 212(a) of the Act lists the classes of aliens who shall be ineligible to receive visas and shall be excluded from admission into the United States. Section 212(a)(14) provides for the exclusion of aliens "seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able,

willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employ- ment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed . . ." This section was incorporated into the Act by the Act of October 3, 1965, 79 Stat. 911, to safeguard the livelihood of workers lawfully present in the United States. H. Rep. 745, 89th Congress, 1st Session (1965).

Regulations to implement the amended statute provide that certain aliens are not considered to be within the purview of Section 212(a)(14). The applicant is seeking to establish that he qualified for the exemption from labor certigication contained in 8 CFR 212.8(b)(4) which states as follows: "An alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least one year's experience or training qualifying him to engage in such enterprise." .

In his brief submitted pursuant to the notice of certification, counsel questions the district director's decision on several points, which we shall consider seriatim. First, it is stated that: "The decision makes many legislative and judicial assumptions, including the assumption that the Petitioner's self-employment in the United States constitutes unauthorized employment. Neither regulation nor judicial decisions are cited in support of that position."

A nonimmigrant in the United States in a class defined in Section 101(a)(15)(B) of the Immigration and Nationality Act as a temporary visitor for pleasure, may not engage in any employment. 8 CFR 214.1(c). Applicant has been employed in the United States since April, 1968. Such employment is illegal. *Wei v. Robinson*, 246 F.2d 739 (C.A. 7, 1957), cert. den. 355 U.S. 879 (1957); *Matter of S.* 8 I. & N. Dec. 574 (1960); *Matter of Wong*, 11 I. & N. Dec. 704 (1966); *Matter of Martinez and Londono*, 13 I. & N. Dec. 483 (1970) S. Rep. 1137, 82d Cong., 2d Sess. (1952).

Exception is next taken to the statement that the applicant has failed to establish he possesses the one year of experience in a managerial capacity as required by the regulation. We agree with counsel that the record establishes applicant's employment in this capacity over the last five to six years. We do not believe, however, that it is proper in this case to grant an exemption from the requirements of Section 212(a)(14) by virtue of the applicant's experience gained or funds derived from employment while unlawfully in the United States.

It is stated that the decision does not mention that the petitioner has had as many as eight employees, and when interviewed, was employing

four workers. This is not substantiated in the record nor is the contention that salaries paid by applicant have averaged over $40,000 per year. The company's income tax returns for 1972 and 1973, the only evidence present, show salaries paid for those years as $29,850 and $18,735, respectively.

It is contended that, in addition to the initial investment of $4,000, amounts in excess of $10,000 have also been expended for purchase of capital goods. We have only the applicant's statement in this regard since it is impossible to determine from the checks submitted precisely what they were used to purchase. These checks were written between February, 1972, and May, 1974. Many of the later checks are for uniform amounts to banks such as would be used to pay a loan. The balance could have been written in the normal day-to-day transactions of a business or represent re-investment of money earned. Counsel states that applicant has formed a Massachusetts corporation and made an additional investment of $5,000 while negotiating for distribution rights for automobile paint. To support his claim, there is a copy of Articles of Organization dated April 9, 1975, for Northeast Auto Paint Distributors, Inc., showing 2,000 shares of stock with a par value of $1 per share listing the applicant as president and a bank statement in the name of the company showing a balance of $4,450. With regard to applicant's real estate holdings, we will abide by the finding in the *Matter of Heitland*, 14 I. & N. Dec. 563 (1974), which finds that land holdings and savings bank accounts do not qualify as investments within the contemplation of the regulation. An alien who asserts that he qualifies for the "investor" exemption for labor certification has the burden of establishing his claim through unambiguous proof and doubt should be resolved against the "investor" claimant. *Matter of Ahmad*, 15 I. & N. Dec. 81, (1974). In the instant case, it is determined that the applicant has failed to establish that he qualifies under 8 CFR 212.8(b)(4) as one who has invested or is actively in the process of investing capital totaling at least $10,000.

Additionally, an alien seeking discretionary relief under Section 245 of the Act bears the burden of establishing that he is statutorily eligible for such relief and that discretion should be exercised in his behalf. *Matter of Arai*, 13 I. & N. Dec. 494, (1970). The applicable statute does not contemplate that all aliens who meet the required legal standards will be granted adjustment of status to that of a permanent resident since the grant of an application for adjustment of status is a matter of discretion and of administrative grace, not mere eligibility. *Matter of Ortiz-Prieto*, 11 I. & N. Dec. 317, (1965). Thus, assuming arguendo that the applicant is exempt from the labor certification of Section 212(a)(14), his application is denied as a matter of discretion. He has been in violation of the immigration laws of the United States since April, 1968.

His disobedience of our laws commenced only one month after he arrived in this country as a visitor. His total work experience was acquired while he was illegally in the United States—in violation of his status as a visitor for pleasure and thus not permitted to be employed. He has no unusual or outstanding equities. In the absence of unusual or outstanding equities, an alien will not as a matter of administrative discretion be granted permanent resident status on the basis of a labor certification issued under Section 212(a)(14) of the Act or exemption therefrom, which is predicated on employment while unlawfully in the United States.

*It is ordered* that the decision of the District Director be and same is hereby affirmed.

733